Arnold *et al. vs.* Arnold *et al.*

---

ARNOLD *et al. vs.* ARNOLD *et al.*

62 627
d112 214

62 627
129 681

1. A court of ordinary to which application is made for a grant of administration, is the proper tribunal to determine the question of its own jurisdiction. If the decedent died testate instead of intestate; or if, being a non-resident of the state, he left no assets within the

county where the application is pending, the presumption is, that jurisdiction will be declined, and that no administration will be granted. A court of equity, therefore, will not, on either of these grounds, or on both of them, restrain the applicant from bringing on for a hearing in the court of ordinary, a *caveat* which has been filed to his application, though the complainants in the bill have, since that proceeding was commenced, propounded for probate, in another county where there are assets, an alleged last will and testament disposing of the decedent's whole estate, in which paper they are named as legatees.

2. Where a non-resident intestate left assets in two counties of this state, administration can be granted in either, and the ordinary first commencing the exercise of jurisdiction will retain it. So the will of a non-resident may be proved here in any county in which there are assets. Debts by simple contract are *bona notabilia* in the county where the debtors reside. Shares in the capital stock of a railroad corporation are *bona notabilia* in the county where the stock-books are kept, transfers made, and dividends paid.

3. Under the statute of Arkansas which inhibits the exclusion of a child by will unless the child is mentioned therein by name, a general mention of children as a class, without stating the number of them, is not the mention of any of them by name, nor the equivalent thereof. But this infirmity of the will is no ground for denying probate.

4. A paper, signed, sealed and delivered, and attested by two witnesses, in which the maker declares that, by reason of his love and affection for certain of his children (naming them), he has this day transferred to them, in their own right, 152 shares of stock in a certain railroad corporation, and 52 shares in another (describing particularly the certificates by which the shares are held); and that said stock is fully and completely transferred to said children; and that it is his intention that the shares shall be divided among them, seven equal parts to be made, and the oldest son to draw and be entitled to two of the parts, which two parts are hereby set apart to him, and the remaining five parts to be equally drawn, part and parcel alike, by the other five children; but reserving to himself the right and privilege of drawing the dividend on all of said shares during his natural life, and to use and control the same, but immediately on his death this transfer is to take effect, and the transfer and delivery so intended to be perfected and completed; and constituting and appointing, for the purpose of carrying out this transfer in good faith, and that the same may be done according to his intentions and desires, his friend (naming him) his attorney in fact to transfer said shares of stock to said children, on the books of the companies, to all intents and purposes as fully and legally as if done by himself in person; and declaring his desire and hope that

this matter may be completely and fully effected as above set forth, by his said attorney in fact, and to do all other things to put said children in possession of said shares, is testamentary in its character, and was without operation in the life-time of the maker. For this reason, no injunction is necessary to restrain the so-called attorney in fact from prosecuting a mandamus to enforce it as a deed.

Injunction. Wills. Jurisdiction. Ordinary. Personalty. Deeds. Before Judge LESTER. Fulton County. At Chambers. January 4, 1879.

Martha Arnold and her children, with the exception of Frank J. Arnold, filed their bill against Hugh M. Arnold, said Frank, and others, making, in substance, the following case :

On May 11, 1870, in the county of Fulton, James Arnold, then a resident and citizen of Georgia, executed a will bequeathing all his property, a part of which was certain railroad stock, to a trustee in trust for the use of complainants and the said Frank, the estate to the children being one in fee simple, and that to the mother being a right to maintenance and support on certain conditions. Martha was formerly testator's slave, and the other complainants and said Frank were children which she bore to him. (In this will, which was attached as an exhibit, the only reference to the legitimate children of the testator, was as follows : "All my white, legitimate children have heretofore received from me what I deem to be a sufficiency of my property for their comfort, and therefore are to have no interest in this property or any other I may have at the time of my death, it being my main intention to provide for the support of the children of Martha Arnold mentioned in this will, which said children are recognized as my children ; and I feel it my duty to make the provision hereby made by this will.")

Afterwards testator sold the plantation mentioned in the will and removed to, and became a resident citizen of, the state of Arksansas. In that state he died, on the 15th day August, 1876. In May, 1876, he executed an instrument which is as follows :

"STATE OF ARKANSAS—County of Logan:

"I, James Arnold, a citizen of county and state aforesaid, for the love and affection which I have and entertain for the following named persons, being my own children, to-wit: Frank J. Arnold, Woodson H. Arnold, Elizabeth M. C. Arnold, Jones N. Arnold, James E. Arnold, and Park E. Arnold, there being six children, I have this day transferred to them, in their own right, 152 shares in the capital stock of the Atlanta and West Point Railroad Company, in the state of Georgia, and which is fully set out and described in the certificate of said company, issued to said James Arnold on the 3d day of December, 1867, No. 305, and signed by John P. King as President, and William P. Orme as secretary, of said company, said shares being of one hundred dollars each paid into said company; also, 52 shares of the stock of the Georgia Railroad and Banking Company, in the state of Georgia, which is also definitely described in the certificate issued to said James Arnold, No. 3389, by John P. King as president, and I. Milligan as cashier of said company. Said 52 shares of said last described stock is also fully and completely transferred to my children above described; but it is my intention that all of said shares shall be divided among my said children as follows: the same to be divided into seven equal parts, and my oldest son of the above described children shall draw and be entitled to two parts of the whole, and said two parts are hereby set apart to him, the said Frank J. Arnold, and the remaining five divisions to be equally drawn, part and parcel, alike by my other five children, as above described, to-wit: Jones N. Arnold, Elizabeth M. C. Arnold, Woodson H. Arnold, James E. Arnold, and Park E. Arnold, the last named five children to be equal, or, in other words, said Frank J. Arnold to draw out and own two parts of said shares, and the remainder of said children to draw and own one part of said shares each.

But I, the said James Arnold, reserve the right and privilege of drawing the dividend on all of said shares during my natural life, and to use and control the same, but immediately on my death this transfer is to take effect, and the transfer and delivery so intended to be perfected and completed; and for the purpose of carrying out this transfer in good faith, and that the same may be done according to my intentions and desires, I hereby appoint and constitute my esteemed and dear friend, W. J. Houston, of Fulton county, my legal and duly appointed attorney in fact to carry out the transfer according to the spirit and intention of this instrument, by transferring said shares of stock in said companies to the said described children on the books of said company, to all intents and purposes as fully and legally as if done by myself in person; and it is my desire and hope that this matter may be completely and fully effected, fully as above set forth by my said attorney in fact, and to do all other things to put my said children, as above described, in possession of said shares.

In testimony whereof I have hereto set my hand and seal, this 25th day of May, 1876.

[Signed]                                                      JAMES ARNOLD.

"Signed, sealed and executed in our presence, and acknowledged this 25th day of May, 1876.

M. M. BEAVERS,
P. H. RICE,
Witnesses.

Complainants have petitioned the ordinary of Fulton county for the probate of the will of 1870. Houston, of DeKalb county, Georgia, the person named in the above instrument, has applied for a *mandamus* against the railroad companies to compel the transfer of the stock to the grantees therein mentioned. In September, 1876, Hugh M. Arnold applied for letters of administration in Coweta county, alleging that there were assets in that county, and that James Arnold died intestate. Frank J. Arnold filed a *caveat* against the application on the grounds that there were no assets in that county, and that there was a will. The issue was carried by consent to the superior court, in which it is now pending. Hugh M. Arnold procured temporary letters, and is seeking to obtain the dividends due on the stock. The principal office of the Atlanta and West Point Railroad Company is in Fulton county, and these assets are in that county, if James Arnold owned the stock at his death. It is doubtful whether the aforesaid paper is a deed or a will. If it is a deed, there are no assets in the state, or if there are any they are not worth disputing about; if it is a will, then there are such assets, to-wit: the railroad stock. Complainants are not parties to the proceeding in Coweta, and do not desire to be. The proceeding in Fulton to prove the will is the only one in which the rights of all parties can be settled. An injunction is prayed for to restrain Houston's and Hugh M. Arnold's applications until the proceedings in Fulton are ended; also, to restrain the collection and the payment of dividends. The petition to the ordinary of Fulton county is exhibited. It was made by complainants and Frank Arnold. It shows

that all of the heirs-at-law of James Arnold, who are citizens of Georgia, reside in Coweta county; that James Arnold at his death had in his possession, and was the owner of, the stock mentioned in the will, that the principal office of the West Point Railroad Company is in the city of Atlanta, in the county of Fulton, so that there are assets of said estate in said county.

The bill was demurred to on the grounds that there was a remedy at law, there was no equity in the bill, it was multifarious, and that as jurisdiction had already attached in Coweta, the ordinary of Fulton had none.

Hugh M. Arnold answered, in substance, as follows: The paper of 1870 is not the last will and testament of Jas. Arnold. As to the execution of the paper he knows nothing. Jas. Arnold sold the plantation, moved to Arkansas, and died as alleged. He knows nothing as to the execution of the instrument of May, 1876. He does not know, but has been so informed, that the petition to the ordinary of Fulton county has been filed. Has no knowledge of the Houston application, but if it has been done, Houston is acting at the instance of complainants, and for no other purpose than to accomplish a transfer of jurisdiction. Defendant applied for letters as charged, and it is true that there were, and are, assets in Coweta county, consisting of a note on Park M. Arnold for $9,000.00, one on N. C. Bridges for $150.00, and other notes amounting to $1,000.00. Frank Arnold filed a *caveat* as charged. He brought the original paper which he alleged to be the last will into court, and to that defendant filed a *caveat*, a copy of which is attached to the answer. The issues thus formed are now pending in Coweta superior court. Defendant denies that he is trying to obtain the dividends on the stock. He is not seeking them, and does not desire the possession of them until his right shall have been established by law. The principal office of the Atlanta and West Point Railroad Company is in Fulton county. The antagonism of interest between Frank Arnold and the others is only apparent. Frank is acting for

them all in Coweta. Complainants may be made parties in Coweta. Several of the heirs-at-law reside in Coweta, and none of them are in Fulton.

Affidavit of Redwine:

When James Arnold left for Arkansas I was constituted his agent to look after certain of his affairs here. I was such agent at his death. I then held, and now hold, in Coweta county, certain property of his. It now belongs to his estate.

The *caveat* of Hugh M. Arnold to the will in Coweta was introduced. It attacks the will on the grounds of incapacity, fraud, undue influence, etc.

The demurrer and application for injunction were submitted together, and the chancellor ordered an injunction restraining the proceeding in Coweta until final judgment on the attempted probate in Fulton, and also restraining Hugh from collecting dividends, and as the paper of May 25, 1876, was believed to be a deed, the injunction as to Houston was denied.

Complainants excepted as to this denial, and defendants to the granting of an injunction.

Davis & Brewster; John S. Bigby; Hopkins & Glenn, for plaintiffs in error, argued that ordinary of Coweta county had jurisdiction of the grant of administration, Code, §§333, 334, 2487, 2502; 27 *Ga.*, 75. No provision of our law for proving foreign will, Code, §§2421, 2450, 2614, 2433–8. If there was, will of 1870 was void as to legitimate children, Code, §2237; 3 *Ga.*, 432. By statute of Arkansas, deceased died intestate as to unnamed children, 23 Ark., 569. Shares are distinct from capital stock, and holders can enjoy nothing but dividends, 8 *Ga.*, 486; 40 *Ib.*, 103; Ang. & Ames on Corp., §557; 5 Otto, 687; 6 *Ib.*, 196. Shares are to be transferred according to our law, 3 How., 483; Code, §§1496, 2626; acts of 1847, p. 180, §§7, 8; acts of 1851–2, p. 125. Instrument executed in May, 1876, created no present estate, Code, §2395; 2 *Ga.*, 32; 20 *Ib.*, 707; 10 *Ib.*, 508; 51 *Ib.*, 240. It was not delivered, 5

Bush, 248 ; Ang. & A. on Corp.,§564 ; 1 Par. on Con., 234, Code, §§2557—2560 ; 53 *Ga.*, 532 ; 55 *Ib.*, 369.   Houston an interloper, the administrator proper person to collect, 39 *Ga.*, 565 ; 50 *Ib.*, 265.

McCay & Trippe ; Candler & Thomson, for defendants, cited 8 *Ga.*, 236 ; 12 *Ib.*, 61 ; Code, §334 ; 1 Williams on Ex., 333, 361 ; 4 M. & W., 91 ; 1 Bradford, 69 ; 2 *Ib.*, 281 ; 1 El. & El., 287 ; 7 *Ib.*, 361 ; 1 Plowden, 275—281 ; 1 English, 114 ; 1 Ark., 83 ; 3 *Ga.*, 46, 569 ; 13 *Ib.*, 515 ; 29 *Ib.*, 677 ; 55 *Ib.*, 56 ; 56 *Ib.*, 573 ; 4 *Ib.*, 83 ; 1 Field on Corp., 110, 131, 134.

Bleckley, Justice.

This contest, though opening as a mere skirmish at one of the outposts of equity, has drawn into it all the forces of both combatants, and proved a general engagement, with results well nigh if not quite decisive of the whole substance of the controversy.   Some of the parties to the bill stand indifferent, and others are apparently separated from their friends and mingle with their enemies, but it is obvious that the real dispute is between the illegitimate children of James Arnold, deceased, together with their mother, on one side, and his legitimate children, who are his heirs-at-law, on the other.   The property for which they contend is certain shares of railroad stock, with the dividends payable thereon.   The alleged right of the illegitimate children is based, first, upon a will made in 1870, and, secondly, upon an instrument in the general form of a deed made in 1876. In each of these documents an attempt is made to dispose of the stock in behalf of the illegitimates, though the details of disposition in the one are different from those in the other.   The mother, also, was designed to participate, in a limited and contingent way, in the benefits of the former, but is not named as a beneficiary under the latter.   Arnold, the father, after making the will, removed to Arkansas, and died domiciliated in that state, having in the meantime exe-

cuted the instrument of 1876. After his death, and prior to the filing of the present bill, three several proceedings were commenced here : first, his legitimate son, Hugh M. applied to the court of ordinary of Coweta county for letters of administration, to which application a *caveat* was filed by Frank, one of the illegitimates, and the issue was appealed by consent to the superior court, the ordinary granting temporary letters to the applicant; secondly, the illegitimates and their mother propounded the will of 1870 to the court of ordinary of Fulton county for probate in solemn form; and, thirdly, Houston, the friend and attorney in fact named in the instrument of 1876, petitioned the superior court of Fulton county for a *mandamus* to compel the railroad companies to make the transfer of the stock upon their books according to the terms of that instrument. While these matters were all pending this bill was filed. The injunction for which it prays is restricted in the time of its operation to the rendition of the judgment on the application in Fulton to probate the will. The prayer is, that until that time Hugh M. and Frank be restrained from proceeding to try the issue pending in Coweta; that Hugh M. be restrained from collecting, and the railroad companies from paying to him, any dividends on the stock ; and that Houston be restrained from proceeding with his petition for a *mandamus*. The chancellor granted the injunction as prayed for touching the first two of these objects, and denied it as to the last.

1. Ought a trial of the issue in Coweta to be deferred or delayed by injunction ? We think not. The application in that county for letters of administration went upon the ground that James Arnold died intestate, and that he left assets in that county to be administered. These questions are both covered by the *caveat*; and the *caveator* and the applicant are at issue upon them. The complainants in this bill can become parties to that issue if they please to do so. They and all the world besides have been cited to appear

and show cause against the application for letters of administration. The court of ordinary of Coweta county, or the superior court on appeal, is perfectly competent to decide whether the deceased died intestate, and also whether he left assets in Coweta. There need be no anticipation of a mistaken or of an erroneous decision upon either question. If perchance, error should be committed, there is an easy corrective by means, ultimately, of a writ of error to this court. The courts in Coweta are of equal rank with those in Fulton, and for their own purposes can determine whether there is a will or not. They need not await the result of proceedings in Fulton to ascertain that fact. And on the question of assets in Coweta, the judgment yet to be rendered in Fulton will throw no light whatever. It ought to be presumed that there will be no usurpation of jurisdiction. If there was testacy instead of intestacy, the application in Coweta will not be granted, nor will it be granted if no assets were left in that county. Thus, no injunction is needed to prevent an improper termination of the proceeding which is pending on appeal in Coweta. With respect to the collection of dividends by authority of the temporary letters of administration, no danger to the fund if it should reach the hands of the temporary administrator is apparent. If the temporary letters are valid, bond and security were given when the letters issued, and the money from dividends will fall within this protection. If, on the contrary, the letters are invalid, so that the sureties on the bond are not bound, the railroad companies will pay at their peril. There is no insolvency shown in any quarter, nor any well grounded apprehension for the ultimate safety of the dividends.

2. The application for letters was made in Coweta before the will was offered for probate in Fulton, and temporary letters were granted. Should it turn out that the so-called will is not in fact the will of James Arnold, but that he died intestate, and also that he left assets in both Coweta and Fulton, the ordinary first commencing the exercise of jurisdiction would retain it. "The ordinary can grant adminis-

tration upon no person's estate who was not a resident of the county where the application is made at the time of his death ; or, being a non-resident of the state, has property in said county, or a *bona fide* cause of action against some person therein. When such non-resident deceased persons have such property or such cause of action in more than one county, such letters may be granted in either county, and the ordinary first granting them acquires exclusive jurisdiction." Code, §§333, 334, and see section 2502. It is not improbable that the grant of temporary letters pending an application for permanent letters, would be a sufficient " first granting" to localize the jurisdiction, and render it exclusive, if there proved to be an intestacy, and no want of assets in the county. There is no express provision of the Code for admitting foreign wills to probate within this state. The result is, that the common law on that subject is in force, so far as it can be applied, as to which, see 1 Williams on Executors, 226, *et seq.* The fact that for some purposes the Code dispenses with probate here after probate has been had in the state of the testator's domicil (sections 2433, 2450), does not hinder probate here before it has taken place at the domicil, nor even afterwards. The express permission to proceed on the foreign probate in the given cases, is not the laying down of an exclusive, but of a cumulative remedy. We think the will of a citizen of another state may still be probated in this state at the election of those having an interest, or an apparent interest, under it. In what county ought it to be propounded? In any county where there are assets—*bona notabilia.* Sections 333 and 334 of the Code, recited above, may be taken as a guide, following their reason and spirit. Substituting counties for ecclesiastical divisons and subdivisions, these sections are not substantially different from the common law. Debts by simple contract are *bona notabilia* in the county where the debtors reside ; and shares in the capital stock of a corporation are *bona notabilia* in the county where the stock-books are kept, transfers made, and dividends paid. 1 Williams on Executors, 192, *et seq.*

3. Though the will was executed in Georgia, and whilst the testator was a citizen and resident of this state, it is, so far as its dispositions of personalty are concerned, to be governed by the laws of Arkansas, the state of the testator's domicil and citizenship at the time of his death. There is a statute of Arkansas which inhibits the exclusion of a child by will unless the child is mentioned in the will by name. Arnold had several legitimate children, and the will which we are considering makes no mention of them, except to designate them as a class, not even specifying the number so as to show that he had them all in mind, and that none of them were overlooked or forgotten. This general designation of children is neither the naming of them, which the statute requires, nor the equivalent of such naming; it complies with neither the letter nor the spirit of the statute. We think, therefore, that if the will shall be probated, and that if the legitimate children do not voluntarily yield to its provisions, they will take precisely the same as if the testator had died intestate. But this consequence does not stand in the way of admitting the will to probate. The *factum* of the will is not canceled by the possible failure of some or all of its dispositions. After their father's will has been established, the children may not complain. They may not then insist on their legal rights, and if they do not, there will be no impediment to the execution of the will as it is written. See the Arkansas cases cited in the briefs of counsel.

4. The instrument of 1876 is testamentary in its nature, and not a deed. Its character is determined by the time when it was designed by the maker to take effect, and that time is expressly declared in the instrument itself. The following language is decisive: " But immediately on his death this transfer is to take effect, and the transfer and delivery so intended to be perfected and completed." The friend designated as attorney in fact had nothing to do so long as his principal lived. The words just quoted qualify and explain the preceding recitals in the instrument, that

" he has this day transferred," and that " said stock is fully and completely transferred." The purpose was to make as full and complete a transfer as he could, consistently with postponing the actual and effective passing of the title until his death. He wanted to retain the stock in his own name, and for his own use while he lived, and then for his illegitimate children to have it through a regular transfer, to be made by his friend, Houston, on the books of the two companies. There is no substantial difference between such a scheme and the ordinary bequests in a will. In either case, the owner of the property holds on until death shakes him loose, and he appoints beforehand who is to succeed him. We entirely agree with the chancellor in the opinion that there should be no injunction to restrain Houston from proceeding with his petition for a *mandamus* to coerce the railroad companies to transfer the stock on their books, but our reason is precisely the opposite of that which he has assigned. He thought the instrument of 1876, a deed; we think it a will; he thought Houston should be allowed to proceed because entitled to prevail; we think his proceeding will be harmless because he is not entitled to prevail. No injunction is needed to retard a case which is utterly empty, and which a trial, whether had soon or late, must annihilate. The judgment refusing to enjoin Houston is affirmed; that enjoining the parties to the issue pending in Coweta, and enjoining the temporary administrator from collecting, and the corporations from paying dividends, is reversed.