EPPING, BELLAS & CO., PLAINTIFFS IN ERROR, VS. GEO. W. ROBINSON, DEFENDANT IN ERROR.

1. The County Court has general and exclusive jurisdiction, by the statute, to grant letters of administration upon the estates of deceased persons. The order granting letters is the exercise of jurisdiction, involving the adjudication or jurisdictional facts. The judgment cannot be attacked collaterally by proof *aliunde* the record to disprove the jurisdictional facts already adjudicated by the County Court.

2. But the County Court is not a court of general jurisdiction in the course of the common law, and the rule of presumptions, as to jurisdiction not appearing of record, is not applicable to this court. Its jurisdiction should appear by its records, and when its records and proceedings do not disclose jurisdiction in a particular case, they may be attacked in any collateral proceeding by showing the absence of jurisdiction.

3. Yet there are two exceptions to the rule that the order and judgment of the County Court cannot be impeached collaterally by proof outside the record, to wit : the fact that the supposed intestate is not dead, and the fact that letters have already been lawfully granted in the State and not revoked. In such cases jurisdiction is impossible.

4. The provisions of the statute that foreign administrators may bring suits in this State, and that special letters of administration may be obtained by one specially authorized by foreign representatives, for the collection of debts due the deceased, are not exclusive of the power to grant letters generally within the State in cases provided by law.

5. The term "goods" embraces bills, notes and choses in action wherein money is due, where that word is used in the statute relating to the granting of letters of administration in this State upon the estate of a person dying out of this State possessed of "goods and chattels" in this State. Such evidences of debt are assets of estates.

6. A plea that letters of administration were improperly granted and void because deceased left no goods, chattels or lands in this State, deceased having died out of the State, and that the County Court was without jurisdiction to grant letters *as appeared upon the face of the records of the County Court* granting, the letters is a good plea that the letters are void.

7. A plea in such case simply alleging the absence of certain jurisdictional facts, but not averring that the County Court has not adjudicated upon these facts, (the granting of the letters being *prima facie* evidence that the court had so adjudicated,) is not a good plea that the letters were void. The judgment of the County Court granting the letters is generally conclusive as to all matters properly before it, including jurisdictional facts, until reversed or set aside by direct proceedings, with the exceptions before stated, and the facts so adjudicated cannot be re-examined collaterally.

This is an action upon a bond given by one Hirschfelder as principal, and Robinson as surety, under the following circumstances : Plaintiffs commenced an action at law against Hirschfelder, to recover an alleged indebtedness. Hirschfelder then filed his bill in equity, praying an ac-

counting between the parties, and obtained a decree that
the suit at law be stayed upon his giving a bond with se-
curity, conditioned that Hirschfelder pay whatever amount
might be decreed to be due from him to plaintiffs. The
bond was executed with Robinson as surety. Pending the
accounting Hirschfelder died and letters of administration
were granted to one Tate, who was, as administrator, made
a party to the suit.

Such proceedings were then had that the court decreed
that upon the accounting there was found due to plaintiffs
(defendants in the equity suit), on the 15th August, 1882,
including interest, over four thousand dollars, and this
money not being paid, plaintiffs commenced suit upon the
bond.

Defendant pleads:

1st. " As to the appointment of Walter Tate, admin-
istrator of the estate of said Y. S. Hirschfelder, alleged in
said declaration, that the said Y. S. Hirschfelder was never
a resident of Florida, but for many years prior thereto,
and at the time of his death, mentioned in said declaration,
had been and was a resident of the State of Alabama, and
died at a place out of the State of Florida, and at the time
of his death was not possessed of any goods, chattels or
lands in any county in this State, by reason whereof the
appointment of said Walter Tate, (which defendant avers
was procured by the plaintiffs in this action, and not by
the production of legal authority from the representative
of the deceased, Hirschfelder, qualified by law in the State
of Alabama,) was without any authority of law or juris-
diction in said County Court of Escambia county, *as ap-
pears upon the face of and by the records of said County
Court*, and was and is altogether void and of no effect."

2d. " There was no final determination of the case be-
tween the plaintiffs in this suit and the said Y. S. Hirsch-

felder, as pending said suit the said Y. S. Hirschfelder died, as stated in said declaration, and no legal representative of said deceased party revived said suit, nor was any legal representative of said deceased party made party to said suit, for defendant says that said Y. S. Hirschfelder died at a place out of the State of Florida, and at the time of his death was not possessed of any goods, chattels or lands in this county, nor were there any debts due to said deceased, Hirschfelder, from persons living in this county for the collection of which the said Tate, or any other person, produced or had legal authority from the representatives of the deceased, Hirschfelder, to be appointed administrator."

The plaintiffs demurred to both pleas and gave as ground of the demurrer to each, that " the said plea does not state facts which show that the letters of administration of said Walter Tate were void."

The court below overruled said demurrers and sustained the pleas.

Whereupon plaintiffs replied, setting up that Baars, one of the plaintiffs, was a citizen and resident of Escambia county, and that said Hirschfelder, in his bill in chancery, to stay the suit at law for an account, claimed that the plaintiffs were indebted to him in a sum greater than plaintiffs' claim against him and was prosecuting said suit to recover the same.

To the said replications defendant, Robinson, demurred. The court below sustained the demurrers, and rendered judgment for defendant.

Plaintiffs bring error upon the rulings.

*John A. Henderson* for Plaintiffs in Error.

The pleas profess to show that Tate's letters of administration are void.

But the presumption of law being in favor of jurisdiction, it must be assumed to have existed until the negative of every jurisdictional fact overthrows it.

According to the pleas, there can exist no legal status for an administration in this State, in the case of a person having no domicile in it, and who dies beyond, and leaves no *property* within its limits.

If that be true, the plaintiffs have no case. But if a debt, claimed and asserted by the decedent, at the time of his death, against persons resident in Florida, creates such a status, the pleas are bad because they do not deny the existence of such *chose in action*.

At common law the Ordinary's power to appoint an administrator never fails when there are assets within his jurisdiction. Toller's Ex., 76-7 ; 1 Williams' Ex., 226 ; Lomax Ex., 278, 423 ; Bacon Abrg., title Ex. H. 2.

Debts of every description are assets. 3 Williams' Ex., §§1669-1772; Ruggles vs. Sherman, 14 John., 446 ; 8 Sm. and M., 682 ; Record vs. Howard, 58 Me., 225 ; 1 Ala., 594 ; 18 N. J. L., 75 ; 12 B. Munro, 504.

The existence of such assets gives a status for an administration in the domicile of the debtor, for a foreign administrator could not sue for them. Story Con. Law, §513 ; Wharton Id., §604.

Neither the statute which authorizes a foreign administrator to sue, (McClellan's Dig., 97, §73,) nor that authorizes the issue of letters of administration to the agent of such an administrator, (Ibid, 77, §4.) by necessary implication divest the County Judge of the common law power to appoint an administrator, when a debt exists in this State, and neither the administrator of the domicile is enforcing its payment, nor an agent of his is applying for or has obtained letters.

The language of both statutes is permissory, " may be

granted " in the first case, and shall be "authorized " in the second.

Similar legislation in Kentucky has received a like construction as that for which we contend. Moore vs. Tannee's Adm'r., 5 Mon., 43.

Permission to proceed on a foreign probate, is not the laying down of an exclusive, but an accumulative remedy. Arnold vs. Arnold, 62 Ga., 637.

The appointment of Tate as administrator was the exercise of jurisdiction by a court with exclusive power over the subject. Its order in the exercise of jurisdiction binds all the world. 16 Ohio St., 455.

If there had been no estate of any kind, belonging to the decedent in Escambia county, neither "choses in action" and pending suit, nor property of any kind, nothing to give the court jurisdiction, the appointment was not void. Fisher vs. Bassett *et al.*, 9 Leigh, 119. And was good until revoked. Ibid. And cannot be impeached collaterally. 62 Ga., 627 ; 65 Ga., 412 ; 55 Texas, 493 ; 31 Ind., 456 ; 65 Mo., 250 ; 16 Ohio, 455, and 9 How., 319.

The legal title to all property, including *choses in action*, vests in the administrator. 18 Conn., 110. There is no fixed rule in regard to property, having no fixed *situs*, and the jurisdiction of the administrator is left to depend largely upon what may be required for the attainment of justice, in each case as it may arise. Wells *et al.*, vs. Miller, Adm'r.

Says C. J. Shaw, in Wheelock vs. Price, 6 Cush., 289, " perhaps it is not material that the jurisdiction under which the Probate Court granted letters, were funds which never went to the administrator."

I refer the court to the case of Johnson vs. Beagley, 65 Mo., 250, as affirming the doctrine that the grant of letters

is the conclusion of the jurisdictional question in all collateral matters.

The purpose of the replications was to show affirmatively what might justly be inferred from the pleas, the existence of a *chose in action* claimed, and being enforced at law, by Hirschfelder, at the time of his death, against a citizen of Florida.

That the demand he was asserting by suit might be successfully met by plea of set-off, counter claim or other defence, could not affect the question of jurisdiction.

A debt, no matter what its form, is but a *chose in action,* to be asserted and enforced by suit, at the risk of a successful defense.

If the administrative status is made to depend upon the result of a suit for a debt, and not upon the claim asserted by the decedent in his life time, this absolutely would follow : the jurisdiction of the County Judge would be dependent upon an event which could never occur until he had first exercised the jurisdiction of appointing an administrator.

*E. A. Perry* for Defendant in Error.

The court did not err in sustaining defendant's pleas and overruling the demurrers thereto.

The first plea sets forth that Hirschfelder had never resided in the State, died out of the State and left no goods, chattels or lands in Escambia or any other county in the State, facts which make it utterly impossible that any general administrator could be appointed in any county in the State.

Such is not only the law of Florida, (McClellan's Digest, page 77, §3, Emmerson vs. Ross, 17 Fla., 122-127, where this court points out what is necessary to give jurisdiction

to Probate Courts in Florida to appoint administrators) but such is the law everywhere; thus " the opening of a. succession and the appointment of an administrator in a. parish where the deceased never has resided nor owned property therein at the time of the death, are absolute nullities, and any and all proceedings had, and all judg-- ments rendered against the succession, are void." Milten- berger vs. Knox, 21 La. Ann., 399 ; Patillo vs. Barksdale,. 22 Ga., 356.

Two jurisdictional facts must have existed to give the Probate Court of Escambia county jurisdiction to appoint an administrator—the death of the intestate and possession at the time of death of goods, chattels or lands in the county.

Unless Hirschfelder, when he died in Alabama, was pos- sessed of goods, chattels or lands in Escambia county,. Florida, the appointment of Tate as his administrator is. void as much as it would be if Hirschfelder still lived. Perry vs. St. Joseph, &c., R. R. Co., 29 Kansas, 420.

But the statute law of Florida provides in a certain case for a special administration, subordinate and auxiliary to the general administration, for a special and limited pur- pose, viz: to collect a debt due from a citizen of a county of the State to the decedent of another State.

The second plea states that Hirschfelder died at a place out of the State of Florida, and at the time of his death was not possessed of any goods, chattels, or lands in Es- cambia county, nor were there any debts due to said de- ceased Hirschfelder from persons living in said county, for the collection of which the said Tate or any other person produced or had legal authority from the representatives. of the deceased to be appointed administrator, thus deny- ing the existence of such facts as are necessary to give the

Probate Court jurisdiction to appoint the special auxiliary administrator by the statute provided for.

But plaintiffs argued in court below that the Probate Court had a common law jurisdiction beyond the statutory limitation of their powers, and contend that any claim or supposition of a debt may be the foundation of the special administration which the statute makes dependent upon the existence of " debts due," and debts of such importance and character as to induce the representative of a deceased non-resident to give legal authority for the auxiliary administration for their collection.

The purpose of this statute is merely to clothe the legally authorized agent of the representatives of the deceased with such administrative power as will enable him to collect the debt, and the court is vested with no power beyond that. However it might have formerly been in England, and may now be in some of the States, in Florida there must be a " debt," not a claim, or supposition of a debt.

Leaving out of view the necessity of " legal authority from the representatives of the deceased" to have given the County Court jurisdiction to grant letters of administration " for the collection of such debts," there must have been " debts " or debt, for where the Legislature uses the term debts it cannot be construed to mean a claim or supposition of a debt.

So if we were to adopt the plaintiffs' theory as a substitute for the law of Florida, and ignore the necessity for the " legal authority from the representatives of the deceased," there would still remain the two facts necessary to sustain Tate's administratorship:

1st. The death of Hirschfelder.

2d. The existence in the county of a " debt due " to Hirschfelder.

Both being jurisdictional facts, are in the same degree essential.

Now, if administration had been granted upon the supposed death of Hirschfelder, when in fact he was still alive, it is admitted the administration would have been void *ab initio*.

In like manner, if administration had been granted upon the production of " legal authority from the representatives of the deceased," upon a supposed debt due to him from the plaintiffs, when in fact there was no debt due to him, the administration would be for like cause void *ab initio*. Perry vs. St. Joseph R. R. Co., cited *supra*.

By the laws of England there must have been *bona notabilia* of at least £5. Then if that is higher law than the Florida statutes, there must have been in Escambia county assets—*bona notabilia* of at least £5. But it appears from plaintiffs' declaration itself that the claim or supposition upon which administration was granted instead of being assets or *bona notabilia* of at least £5, is 0— $4,045.58.

Where then do we find the essential fact, a debt due to Hirschfelder in Escambia county?

If the supposition had proven to be a fact, then there could have been no decree in favor of the plaintiffs against Tate. The supposition proving to be groundless, there was nothing upon which to base administration, and Tate's appointment was without an essential jurisdictional fact, and void.

The plaintiffs, to make a party against whom they can take a decree, suppose a debt due to Hirschfelder from them. Having used the supposition of a debt for that purpose, they turn around and show that instead of a debt due to Hirschfelder, the supposition turns out to be a big debt due from Hirschfelder to them.

As well might the plaintiffs have procured Tate to be appointed administrator of their debtor, Hirschfelder, in his life time, have proceeded and taken their decree against Tate, as his administrator, and then used that decree as a cause of action against Hirschfelder.

When we consider, instead of leaving out of view, the statutory requirement of the " legal authority from the representatives of the deceased," it would seem that no room is left for argument to sustain plaintiffs' theory.

There must not only be in fact a ".debt," but a debt to collect which the representatives of the deceased are willing to incur the expense of an auxiliary administration by one whom they duly authorize.

The same argument disposes of plaintiffs' claim that the court below erred in sustaining the demurrers to the replications.

Upon point raised by plaintiffs here, which was not raised in court below, that appointment of Tate cannot be inquired into in this suit, defendant cites: Budd vs. Long, 13 Fla., 309; Comstock vs. Crawford, 3 Wal., 396, 402–3; Thompson vs. Talmer, 2 Peters, 157, 163, 169; Elliott vs. Pursal, 1 Peters, 329, 340; Hayes vs. McNealy, 16 Fla., 409; Price vs. Winter, 15 Fla., 103; Griffith vs. Frazier, 8 Cranch., 12, 23, 24, 28, 29, 30.

The court may of course inquire into jurisdiction collaterally.

THE CHIEF-JUSTICE delivered the opinion of the court.

It was said in Emerson vs. Ross, 17 Fla., 122, 127, that the Probate Judge had a general and exclusive cognizance of the matter of granting letters of administration. That the only facts necessary to give the Probate Court jurisdiction were the death of the intestate and possession at the

time of his death of any goods, chattels or lands in any county in this State. And that the grant of letters in that county carries the right to execute the trust until it is vacated or set aside by some direct proceeding. The court looked into the record to ascertain whether it disclosed that the Probate Court had jurisdiction to grant letters of administration in the case then under examination collaterally.

In Price *et al.* vs. Winter, 15 Fla., 66, 99; the court, upon the jurisdiction of the Probate Court being questioned in a collateral proceeding, examined the record and proceedings in the Probate Court to ascertain whether it had jurisdiction of the matter in question and of the parties.

In Budd vs. Long, 13 Fla., 309, it was said that a collateral inquiry into the regularity of proceedings of a court of record will not be allowed except to show an absence of jurisdiction.

"It is well settled," says Mr. Justice Field, in Comstock vs. Crawford, 3 Wall., 403, " that when the jurisdiction of a court of limited and special authority appears upon the face of its proceedings, its action cannot be attacked for mere error or irregularity. The jurisdiction appearing, the same presumption of law arises that it was rightly exercised as prevails with reference to the action of a court of superior and general authority."

The question then before the court was the action of a Probate Court in the appointment of an administrator. The court say further, " that the *sufficiency of the proof* upon which the court took its action is not a matter open to consideration in a collateral manner. It does not touch the question of jurisdiction."

In Alabama, it is said, "as this (the County Court) is a court of limited jurisdiction everything necessary to give the court jurisdiction should appear on the record; it must

be shown affirmatively that the court has power to act."
Taliaferro, Admr., vs. Bassett, 3 Ala.; 670, 674 ; Miller vs.
Jones, Admrs., 26 Ala., 247 ; Elliot vs. Piersoll, 1 Pet.,
340.

The presumptions indulged in support of the judgments
of superior courts of general jurisdiction arises with respect
to jurisdictional facts concerning which the record is silent.
These presumptions attach to proceedings which are in ac-
cordance with the course of the common law.   Gilpin vs.
Page, 18 Wall., 350, 365.

These general rules, sustained by a mass of authorities,
will not be seriously questioned.   Nor can it be questioned
that the Probate Court, though it is a court of general and
exclusive jurisdiction in the matter of granting letters of
administration, is not a court of general jurisdiction of
" proceedings in accordance with the course of the common
law."   Its jurisdiction is expressly defined and limited by
the Constitution and statutes of the State.   And it may
acquire jurisdiction in the manner prescribed by law and
not by a resort to presumptions not growing out of patent
facts.

Letters of administration are *prima facie* evidence of the
official title of the administrator, but if the order of the
court granting the letters be made without having first ob-
tained jurisdiction of the particular case, and the *absence*
of it appears by the record, presumptions cannot be indulged
in to supply the deficiency.

The finding of a domestic court of general jurisdiction
in regard to jurisdictional facts on which its judgment is
based is conclusive against all collateral attacks, except in
cases where the record of its own proceedings disclosed
their nullity by showing that jurisdiction had never at-
tached in the particular case.   Brockenborough vs. Melton,
55 Texas, 493 ; Arnold vs. Arnold, 62 Ga., 627 ; Taut vs.

Wigfall, 65 Ga., 412; Dequindere vs. Williams, 31 Ind., 456; Johnson vs. Beazley, 65 Mo., 250; Shroyer vs. Richmond, 16 O. St., 455; Abbott vs. Coburn, 28 Vt., 663; Irwin vs. Scriber, 18 Cal., 499; Quidort vs. Fergeaux, 18 N. J. Eq., 472; Galpin vs. Page, 18 Wall., 350, 365; Randolph vs. Bayne, 44 Cal., 366; Fisher vs. Basnett, 9 Leigh, 119; s. c., 33 Am. Dec., 231, notes.

This is the approved general doctrine in nearly all the States. The courts in Wisconsin and Kansas seem to permit an inquiry into jurisdictional facts, by plea and proof, for the purpose of impeaching jurisdiction. A similar rule formerly prevailed in Massachusetts at an early day, but it was changed by the Legislature.

The above rule as generally established in this country is subject to two exceptions, viz: where the supposed intestate is not dead; and where there is an administrator already legally in office. Griffith vs. Frazier, 8 Cr., 9, 23; Andrews vs. Avery, 14 Grattan, 229, 236.

Now the first plea avers that the jurisdictional facts were wanting, and that the appointment of the administrator "was without any authority of law or jurisdiction in said County Court of Escambia county, *as appears upon the face of and by the records* of said County Court."

The demurrer to this plea admits, for the purposes of pleading, that the jurisdictional facts did not exist and that this appears by the record of the County Court. The judgment of the Circuit Court overruling the demurrer to the first plea was therefore correct.

The statute prescribes the cases in which the County Court may grant letters of administration. McClellan's Dig., 77, Act of Nov. 20, 1828. The Act of Aug. 4, 1868, ch. 1627, McClellan, 326, provides the method of bringing matters before the court for its action, to wit: by petition

in writing, and the facts stated in the petition are the grounds of its judgment. Petit's Admr. vs. Petit, 32 Ala., 305; Hay's Admr. vs. McNealy, 16 Fla., 409. When the County Court acts upon the petition and grants the letters, the facts alleged are adjudicated upon, and its judgment upon these facts is conclusive except in a direct proceeding to reverse, set aside or annul the order or judgment of the court. And when the record makes an averment with reference to a jurisdictional fact it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact. Galpin vs. Page, 18 Wall., 366.

Applying the doctrine of presumptions as already stated, it will be presumed that the matters of fact alleged before the County Court were adjudicated, and it will not be presumed that other facts not brought before the court were passed upon.

As to the demurrer to the second plea: This plea avers that Hirschfelder died out of this State and was not possessed of any goods, chattels or lands in the county of Escambia, nor were there any debts due him from persons living in the county for the collection of which Tate or any other person produced or had legal authority from the representatives of the deceased to be appointed administrator.

The letters of administration are *prima facie* evidence of the adjudication of the facts necessary to give jurisdiction. The proceedings before the County Judge are not embodied in the record here.

This plea does not show that the necessary averments or facts were not presented to the County Court, nor that the record of that court shows that the County Court had no jurisdictional facts before it to authorize its judgment.

In the absence of the record of proceedings of the County Court we must presume, from the granting of the letters,

that the jurisdictional facts were before the court and that the court found them to be true.

The defendants cannot now be heard to prove by testimony *aliunde* that record that the facts adjudicated by the judgment of the County Court were not true except to show that the supposed intestate is living, or that letters have been legally granted.

There is no allegation of fraud in the procurement of the letters.

As to the averment that Tate was not authorized by representatives of the deceased to obtain letters for the purpose of collecting debts due to the deceased, that also is a fact which may appear by the record of the proceedings before the County Court to have been adjudicated. But if the assets were merely debts due, and if these are " goods," as expressed in the statute, it is not essential that special letters be procured upon the suggestion of the representatives, though the statute provides that this may be done. Neither the statute authorizing special administrators to be appointed at the instance of the legal representatives, nor the law which authorizes foreign administrators to sue in this State for the collection of debts, is exclusive, but they are cumulative if there is any authority under the statute for appointing a general administrator in this State for this purpose. Moore vs. Tanner's Admr., 5 T. B. Mon., 42; Arnold vs. Arnold, 62 Ga., 637.

The statute provides for administration in this State when the person dies out of the State possessed of any goods, chattels or lands in any county in this State, and administration may be had in any county where any part of such goods, chattels or lands may be. McClellan's Dig., p. 77, sec. 3.

Counsel on both sides agree that this is the proper effect of the statute.

We conclude from the pleadings and arguments of coun-

sel that the assets of the deceased in Escambia county consisted of choses in action or evidences of debt of some kind, the debtor residing in the county.

The question then is, are choses in action or evidences of debt " goods," within the meaning of this statute?

The word " goods," as a technical term of the law, is *nomen generalissimum*, and has very extensive meaning. In a will, where there is nothing to restrain its operation, it includes all the personal estate of the testator. Keyser vs. School District, 35 N. H., 477, 483; 1 Jarman on Wills, 692; Chamberlain vs. Trans. Co., 44 N. Y., 310.

In Tisdale vs. Harris, 20 Pick., 9, it is held that a contract for the sale of shares in an incorporated company was a contract for the sale of goods, wares and merchandise, and within the statute of frauds. To the same effect Calvin vs. Williams, 3 H. & Johns., 38; Balwin vs. Williams, 3 Met., 365; Ayres vs. French, 41 Conn., 142.

" Goods and chattels," in contracts, includes not only personal property in possession, but written instruments of value relating to business matters. Gibbs vs. Usher, 1 Holmes U. S. C. C. R., 348. It includes choses in action and chattels real. *Bouvier;* Ford & Sheldon's case, 12 Coke, 1. In an act of Parliament " goods and chattels " take in choses in action. Ryal vs. Rolle, 1 Atk. Ch., 182. And see 2 Wms. on Executors, 1178, 6 Am. Ed., by Perkins, and notes.

A bequest of " all my worldly goods," words very frequently used in the making of wills, would assuredly carry all evidences of debt and money due from debtors. And the statutes relating to wills and administration, where the term " goods and chattels" are used, should be construed by the same rule. The term, therefore, includes choses in action, notes, bills and other evidences of debt; and the county in this State where the debtor resides may be the

county in which letters of administration should be granted.

The second plea does not aver or show that facts necessary to confer jurisdiction were not presented to and adjudicated by the County Court in granting the letters, as appears by the record of its proceedings, and the demurrer thereto should have been sustained.

The judgment overruling the demurrer to the second plea is erroneous.

The replication to the first plea was properly overruled by sustaining the demurrer thereto, because it was not responsive. It did not allege the existence of assets, nor that the County Court adjudged the existence of assets.

The demur to the replication to the second plea should not have been sustained, because the plea itself was not good in law; and *any* replication to a bad plea is a good replication. The defendants demurrer reached the faults in his own plea.

The judgment is reversed and the cause remanded with directions to enter judgment sustaining the demurrer to the second plea, and that the demurrer to the replication to the second plea be overruled, and that the parties be allowed to amend their pleadings in due time, as they may be advised, and according to the practice of the court.