### NEAL et al. v. BOYKIN.

1. The allegations of the equitable petition brought to set aside the judgment of the court of ordinary granting letters of administration on the estate of a non-resident, to the effect that he left no property in the county where the application was made at the time of his death, and that none was there at the time when the application was made, except a promissory note on an insolvent debtor residing in another county of this State, which had been fraudulently carried to the county where the application was made, for the purpose of giving colorable jurisdiction there, were not sustained by the evidence.

2. Although a resident of another State left, at the time of his death, no property in the county of this State where application for letters of administration was subsequently made, yet where personal property of the estate was brought into such county after his death and was there located at the time when application was made for letters of administration and when they were granted, the court of ordinary of that county had jurisdiction to grant the letters, unless the property was carried there in bad faith, and with the intention of conferring improperly a colorable probate jurisdiction.

3. Where assets forming a part of the estate of a non-resident decedent are located in two counties of this State, administration can be granted in either, and the ordinary first commencing the exercise of jurisdiction will retain it.

Argued January 6,—Decided April 14, 1909.

Equitable petition. Before Judge Roan. DeKalb superior court. August 15, 1908.

*J. J. Bull* and *J. D. Kilpatrick,* for plaintiffs.

*Green, Tilson & McKinney,* for defendant.

LUMPKIN, J. John Neal and others filed their equitable petition against B. M. Boykin, for the purpose of setting aside the grant of letters of administration to the defendant by the court of ordinary of DeKalb county, and of enjoining him from exercising any authority thereunder. On demurrer the petition was dismissed, and the plaintiffs excepted. The judgment was reversed. *Neal* v. *Boykin,* 129 *Ga.* 676 (59 S. E. 912, 121 Am. St. R. 237). On the trial the case was submitted on an agreed statement of facts, and each side contended that the presiding judge should direct a verdict. The judge directed a verdict for the defendant. A motion for new trial was denied, and the plaintiffs excepted.

The disposition of the case made by the presiding judge was correct. The case made by the petition was not sustained by the evidence. The plaintiffs alleged, that the judgment of the ordinary of DeKalb county, granting letters of administration to Boykin, was procured by fraud; that Boykin and Dixon (who was apparently the executor of Neal under a will probated in Florida), had conspired together, and the latter had sent to the former a promissory note due by one Culpepper, a resident of Talbot county, who was insolvent, and so known to be at the time; and that this was done for the purpose of giving jurisdiction to that court, Neal having left no assets there. It was, moreover, alleged that the application of Boykin for letters of administration was kept concealed from the relatives of the decedent and their attorney, who also had acted as agent for the decedent and for the Florida executor. As a ground for appealing to a court having equitable jurisdiction, it was alleged that, "the appointment of the defendant being obtained by fraud, and the court appointing him being without jurisdiction, the petitioners, being remediless in a court of common law, bring this their petition in equity." The agreed statement of facts showed no conspiracy, fraudulent effort to confer jurisdiction, or concealment on the part of Boykin. It showed, that, in addition to the note, at the time when the application for administration was made there were in DeKalb county certain articles of silverware, and a gold watch and chain; that Neal left

a will which was probated in Florida, but not in Georgia, because it had only two witnesses; that, prior to the discovery of this fact, the executor named in the will had sent the note of Culpepper to Boykin, with the request that he endeavor to collect it; that it was a sealed note, and not barred by the statute of limitations, and that Culpepper resided in Talbot county. There was no evidence that he was insolvent, or the note worthless. While Neal left, at the time of his death, a considerable amount of real and personal property in Talbot county, and also certain nephews, before his death he had adopted, by legal proceedings in Florida, the two half sisters of Boykin, who were minors. After his death, they came to DeKalb county, bringing with them the small articles of silverware, and lived with Boykin, who became their guardian. They were the sole legatees under Neal's will, and, if the adoption was valid, would be his sole heirs in the absence of a will, he leaving neither wife nor other children. There is some suggestion of a desire on the part of the plaintiffs to attack the validity of the will and the proceedings in Florida by which Neal adopted these two minor girls. But there is no indication in the record that there is any valid ground for making such an attack. The will was probated in Florida, and admitted to record, according to the laws of that State. The order or decree of adoption was granted by the circuit court there. No reason is shown why either of them is invalid, except in so far as the lack of attestation according to the laws of this State may affect the recognition of the will here. A nephew, other than those who are parties to the present proceeding, made an application in Talbot county to be appointed administrator, after the grant of letters in DeKalb county, and his application is still pending. He and two other nephews have already applied, by petition to the court of ordinary of DeKalb county, to have set aside the grant of letters of administration to Boykin, on the ground of want of jurisdiction, and their petition has been refused. That court, with knowledge of the facts, was of the opinion that it had jurisdiction. If the adoption of the two girls by Neal was valid, they became his heirs, his nephews had no interest in the estate, and there would be no reason to set aside the grant of administration in DeKalb county at the instance of the latter. This would leave as plaintiffs in the present proceeding only two creditors of the decedent.

Though not sustaining the equitable allegations in the petition, the plaintiffs relied upon the naked legal proposition that the court of ordinary of DeKalb county was without jurisdiction, because there was no property of the deceased there at the time of his death, while there was such property in Talbot county; and that the existence of personal property in DeKalb county at the time of the application for administration did not confer jurisdiction upon the court of ordinary of that county. Civil Code of 1895, § 3393, is as follows: "Every application for letters of administration must be made to the ordinary of the county of the residence of the deceased, if a resident of this State, and if not a resident, then in some county where the estate or some portion thereof is." Section 4234 is as follows: "The ordinary can grant administration upon no person's estate who was not a resident of the county where the application is made at the time of his death, or, being a non-resident of the State, has property in said county, or a bona fide cause of action against some person therein." The question arising under these sections is whether a court of ordinary in this State is without jurisdiction to grant letters of administration upon the estate of a non-resident decedent, unless at the time of his death he leaves property located in the county where the administration is sought, or whether the location of personal property within the State at the time when the application is made will confer jurisdiction in the county where it is located. The section first quoted above provides that, as to non-resident decedents, every application for letters of administration must be made "in the county where the estate or some portion thereof is." Does this mean "is" at the time when the application is made, or at the time when the owner died? In the second of the above-quoted sections, does the statement that the ordinary can grant administration upon the estate of no person who was not a resident of the county of the application at the time of his death, or, being a non-resident, "has property in said county," restrict the jurisdiction to the existence of property in the county at the time of the death of such person? If these sections of the code are to be construed as excluding jurisdiction to grant letters of administration in Georgia altogether unless the decedent left property in this State at the time of his death, then any one might remove personal property of an estate into Georgia and hold it

indefinitely without the courts of this State having power to pre-
serve it by administration and placing it in the hands of a legally
appointed administrator, who is under bond for the proper perform-
ance of his duty.  If there were Georgia heirs and creditors, they
could not have the property administered in a regular and or-
derly manner for the payment of their claims and distribution
according to law.  If there were no foreign administrator to re-
cover the property, it would remain in an unprotected condition,
for lack of a legal custodian, unless this should be held to be a
case where "the law, by reason of its universality, is deficient," and
equity should give aid.  If there were a foreign administrator and
"if there be none appointed in the State," under our statutes
he might bring suit, subject to the requirement that he file an
exemplification of his letters of administration.  Civil Code,
§§ 3521, 3522.  If he recovered the property, it would be to carry
it to a foreign jurisdiction for administration.  In the present case
there was no effort to probate a foreign will, by production of the
will itself (Civil Code, §§ 3297-3300) ; or such a will devising
realty, by means of an exemplification of the probate in another
State (§§ 3301, 3302) ; or a foreign will bequeathing personalty,
by means of a similar exemplification (§ 3303).  Nor was this a
controversy between the executor appointed in the foreign juris-
diction and the applicant for administration in DeKalb county.
Both the plaintiffs and the defendant treat the Florida will as
invalid in Georgia.  Both proceed on the theory that there must be
an administrator in Georgia, but they differ as to who should
be appointed and the court which should appoint him.

Referring to Civil Code sections 4234 and 4235 (which latter
section provides that the ordinary first granting letters acquires
exclusive jurisdiction) Bleckley, J., said:  "Substituting counties
for ecclesiastical divisions and subdivisions, these sections are not
substantially different from the common law."  *Arnold* v. *Arnold,*
62 *Ga.* 637.  There is no statutory provision in this State limiting
the amount of property which will authorize an administration;
and unless in extreme cases the doctrine of de minimis should
apply, assets of the decedent may be said generally to be bona
notabilia.  As used in the English probate law, these words mean
notable goods, or property worthy of notice, or of sufficient value
to be accounted for (which by the statute of 1 James I was es-

tablished at five pounds). 1 Williams on Executors (3d ed.), 250. If all the goods of the deceased lay within the same jurisdiction, an administration granted by the ordinary was proper; but if the deceased had bona notabilia (that is goods of a sufficient amount) in different dioceses, administration was granted by the metropolitan of the province, by way of special prerogative, to prevent the confusion arising from the appointment of many different administrators. 2 Bl. Com. 508. The question of whether assets must have been located within the diocese at the time of the death of the decedent does not seem to have been a subject which received much consideration in decisions, although in some of the text-books such appears to have been assumed to be the case. The questions arising were also usually as to the grant of letters by an ordinary or the metropolitan of the same ecclesiastical province; not as to property which might be brought from another country. See, on this subject, Scarth v. Bishop of London, 1 Hagg. 273. In Schouler on Executors (3d ed.), §25, it is said: "The rule of strict construction would seem to refer the locality of personalty in such cases to the situs as existing at the time of the deceased owner's death. Such an interpretation, however, is too narrow to meet the practical needs of a probate appointment for local purposes in modern times; an appointment which perhaps may not be invoked for years after one's death. Hence, for the welfare of creditors and other interested parties, this right of local appointment is more liberally asserted in many of the courts, and local jurisdiction is upheld on the ground that bona notabilia exist when letters are applied for, notwithstanding the goods were brought into the country, or the debtor removed thither subsequently to the death of the owner or creditor; and this seems the better opinion, unless such bringing in or removal was in bad faith, and with the intention of conferring improperly a colorable probate jurisdiction." A quotation was made from this authority approvingly when the case was formerly before this court; but as it was alleged that the note was fraudulently sent to DeKalb county in order to confer colorable jurisdiction, Mr. Justice Beck said: "And so we hold in the present case, that if the note was brought into DeKalb county, as alleged in the petition, as a part of a fraudulent scheme for the purpose of giving falsely a colorable and pretended jurisdiction to the court of ordinary of that county, it would not be

bona notabilia within the county of DeKalb for the purpose of founding administration." 129 *Ga.* 680. It was also said that the note, which then appeared to be a simple contract, would be an asset at the domicile of the debtor in Talbot county. It was thus impliedly recognized that, had there been bona fide assets in De-Kalb county at the time of the application for administration, the court of ordinary of that county would have had jurisdiction. In *Ott* v. *Hutchinson,* 91 *Ga.* 31 (16 S. E. 106), the exact point now before us was not discussed. The decedent, at the time of his death, left assets in the county where the application for administration was made; and the court said: "Where a non-resident dies leaving property in this State," etc.; but the charge of the judge of the trial court to which exception was taken stated that if, at the time when the application was made, the applicant was a creditor of the non-resident decedent, and the latter then had some estate in the jurisdiction, the jury should find for the applicant. The judgment was affirmed by this court. See also Pinney *v.* McGregory, 102 Mass. 186.

The charge of fraudulently carrying property to DeKalb county to confer jurisdiction upon the court of ordinary is eliminated under the evidence, and there is no question of mere temporary presence of property within the jurisdiction, as where a foreign administrator or traveler is passing through the State, carrying with him property left by a decedent in another State. Under the agreed statement of facts, there was sufficient property in DeKalb county to confer jurisdiction upon the ordinary of that county, whether or not the sealed note be treated as a specialty having a situs there. The cases of *Arnold* v. *Arnold,* 62 *Ga.* 637 (supra), *McLaren* v. *Bradford,* 52 *Ga.* 649, and *Patillo* v. *Barksdale,* 22 *Ga.* 356, do not conflict with the ruling here made. The point now decided was not then under consideration, and expressions used in the opinions must be considered in the light of the questions before the court.

Doubtless perceiving the condition that might arise from holding that no court of ordinary in this State could grant letters of administration unless the decedent left property located in this State at the time of his death, it was suggested in the brief of counsel for the plaintiffs in error that if there were no county in the State in which the non-resident decedent left property located at

the time of his death, and no court of ordinary in the State would have jurisdiction to appoint an administrator immediately upon the death of the decedent, and if thereafter some person should tortiously and wrongfully bring property into some county in this State, and should wrongfully and tortiously hold it there, probably the courts would so construe the two sections of the code cited above as to permit the appointment of an administrator in the county where such property was thus held; but it was urged that where a non-resident decedent left, at the time of his death, property located in a county of this State, thereby giving jurisdiction in that county, the court of ordinary of no other county in the State could acquire jurisdiction to appoint an administrator, even though other property belonging to the estate of the decedent should be tortiously brought into such other county, and be there held. This argument commingles two separate questions: first, are the courts of ordinary of this State without jurisdiction to grant letters of administration on the estate of a foreign decedent unless at the time of his death he leaves property located in this State, or (omitting the question of a fraudulent effort to confer jurisdiction) is the existence of personal property located in a county of this State at the time when an application for the grant of administration is made, and so remaining, sufficient to confer jurisdiction upon the court of ordinary of that county? And second, if the location of personal property at the time of the application and the hearing thereof is sufficient to give the county where it is situated jurisdiction to grant letters of administration, but there is another county in the State where there was property at the time of the death of the decedent and where it has since remained, which court of ordinary would have priority of jurisdiction in respect to the grant of letters? The first of these questions is one of the existence of jurisdiction; the second refers to the matter of priority as between two courts, either of which might have had jurisdiction before one undertook to exercise it. There is nothing in the statutes which would authorize the construction that sometimes the location of personal property in Georgia at the time of the application for administration would confer jurisdiction upon a court of ordinary, and sometimes it would not.

The question last stated is answered by the decision in *Arnold* v. *Arnold,* 62 *Ga.* 628 (supra), in which it was held: "Where a

non-resident intestate left assets in two counties of this State, administration can be granted in either, and the ordinary first commencing the exercise of jurisdiction will retain it." See also Civil Code, §4235. *Judgment affirmed. All the Justices concur.*