J. B. E. SLOAN ET AL., APPELLANTS, VS. SUSAN M. SLOAN ET AL., APPELLEES.

1. The general rule is that a party whose title to land is legal in its character, must have possession of the land to entitle him to equitable relief against a cloud upon his title. Possession is not essential where the title is equitable.

2. Possession by a duly authorized agent having charge of all the land and engaged in keeping off tresspassers, is sufficient to sustain the equitable jurisdiction in favor of owners of legal title, who are themselves non-residents.

3. Where the instrument or proceeding complained of as constituting a cloud upon title is void upon its face, or where the instrument is not void upon its face, but the party claiming under it must, in order to recover upon it, necessarily offer evidence that will inevitably show its invalidity and destroy its effect, such instru-

ment is not a cloud upon title within the legal definition of the term.

4. An administrator's deed purporting to convey lands sold by him under an order of a court which, as to its power to make such an order, is a court of special and limited jurisdiction, is not, nor are such deed, and order and other sale proceedings, a cloud upon title when the facts or fact essential to the court's jurisdiction to make the order do not appear on the order or the proceedings upon which such order is based.

5. A tax deed regular upon its face, and which a statute has made *prima facie* evidence of the regularity of all the proceedings connected with the assessment and sale, but which is founded upon a void assessment, is a cloud upon title.

6. Neither the general revenue law of 1869, chapter 1713, as amended in 1872, by chapter 1887, nor that of 1874, chapter 1976, authorized a Collector of Revenue to assess lands for taxes. An assessment of land made under either of said statutes by a Collector of Revenue on a tax roll of 1873, after the same had been delivered to him by the Assessor for the collection of taxes, was a nullity and conferred no power upon him. A sale made by him under the above act of 1874, and a deed executed by the Clerk of the Court, pursuant to such sale. conveyed no title to the purchaser, and the deed is not within the protection of the 63d section of the said act, limiting the grounds upon which, and the time within which, an action to set it aside may be commenced.

8. The County Court as it existed under the Constitution of 1868, prior to the amendment of 1875, was, in its power to sell the lands of decedents for the payment of debts, a court of special and limited statutory jurisdiction, and not one of general and original constitutional jurisdiction over the subject of such sales.

8. Being a court of special and limited jurisdiction, an order made by it for the sale of land of a decedent is not of itself, independent of a recital of the jurisdictional fact in it, or in the sale proceedings culminating in it, evidence that the court had jurisdiction of the subject of such a sale.

9. Prior to the legislation of 1870, §40, *et seq.*, p. 86, *et seq.*, McClellan's Digest, as to such sales, an exhaustion of the personal estate of the decedent was essential to the jurisdiction or power of the County Court to order a sale; and unless the fact of such

exhaustion appears in the order or somewhere in the proceedings upon which it is based, the order is *coram non-judice* and void even upon a collateral attack. If the fact of such exhaustion appears anywhere in such proceedings, the order of sale, though it may be silent upon the subject of exhaustion, is nevertheless an adjudication of the existence of the fact of such exhaustion.

10. Adverse possession of land under claim of title founded on a written instrument must, to be effective against the true title, be continuous for the period of seven years.

Appeal from the Circuit Court for Marion county.

The bill is one to remove a cloud upon title to land situated in Marion county, and was filed July 5th, 1883, against the appellants by the appellees, Susan M. and Sallie H. Sloan, daughters and heirs of William Sloan, who died in Texas in 1862 seized and possessed of the land at his death.

On the 20th day of July, 1869, Edward Barker, County Judge of Marion county, appointed E. J. Harris, H. J. Mann and C. Lopez " to appraise the real estate of the late William Sloan, deceased," and directed them to hand their appraisement to M. A. Clonts, administrator *ex-officio* of said estate, stating in the appointment that Clonts should return the same to the court immediately. On the 21st day of the same month an appraisement of the following real estate, viz : The E½ of Sec. 14, T. 15, R. 23 ; the E½ of S W¼, Sec. 14, T. 15, R. 23 ; the NW¼ of SW¼, Sec. 14, T. 15, R. 23, East; the S½ of NW¼, Sec. 14, T. 15, R. 23, E. ; the NE¼ of NW¼, Sec. 23, T. 15, R. 23, E. ; the SW¼ of NW¼, Sec. 23, T. 15, R. 23 ; the W½ of NW¼, Sec. 26, T. 15, R. 23, E. ; the NE¼ of NW¼, Sec. 26, T. 15, R. 23, E. ; the W½ of Sec. 27, T. 15, R. 23 ; the W½ of NE¼, Sec. 27, T. 15, R. 23 ; the NE¼ of NE¼ of Sec. 27, T. 15, R. 23, E., and the SE¼ of NE¼, Sec. 15, T. 15, R. 23, E., 1,200 acres,

more or less, valued at $2.50 per acre, making three thousand dollars, signed by said appraisers, was filed.

On the 24th day of August, 1869, a petition was filed in the County Court of Marion county, signed " M. A. Clonts, Sheriff and *ex-officio* administrator of the estate of William Sloan," representing that he was such Sheriff and administrator, and stating that " due and legal notice for the space of four weeks has been published in the East Florida Banner that application would be made to the Probate Court of Marion county, and State aforesaid, for permission to sell the real estate of William Sloan, late of Marion county, deceased, and praying an order for the sale of the real estate of the aforesaid William Sloan, as the law in such cases provides. On the same day Edward Barker, the County Judge, made an order which recites the filing of the petition, and that Clonts " has advertised, as the law directs, in the East Florida Banner, published at Ocala, for four weeks in succession, that on that day he would ask of this court an order to sell as above, and there being nothing to the contrary appearing," it allows the administrator "to sell at public auction in front of the court-house door at Ocala, the real estate of the said William Sloan at the legal hour, one month from the date of the order."

On the 28th or 29th of December, 1869, Clonts made "his final report upon said estate consisting of real estate alone, as will be seen by reference to the bill of appraisement, which lands were bid off by S. C. DeBruhl at the sum of ($664) six hundred and sixty-four dollars, of which amount $284.14 were paid, the balance being still due and unpaid, and titles not executed, and a suggestion of insolvency filed." This report then proceeds to state how the amount paid in has been paid out, which is as follows:

For printing 600 appraisers' bill.......................  ............... $12.0 0
Redemption of land for State taxes............................,............. 112.7 5

| | |
|---|---:|
| Letters of administration, $10; advertising, $6.................. | 16.00 |
| Tax for 1869............................................................... | 61.55 |
| "Probate Fees."................................. ........................ | 12.05 |
| Six per cent. commission of $664................................... | 39.84 |
| Services rendered, filing petition, writing, &c.................. | 5.00 |
| Summoning appraisers and services with them................ | 5.00 |
| Petitioning court for titles to S. M. Gary and executing the same....................................................................... | 5.00 |
| Petition to sell real estate and advertising..................... | 5.00 |
| Filing suggestion of insolvency and presenting final report..... | 5.00 |
| Redeeming lands, writing, &c...................................... | 5.00 |
| | $284.79 |

On January 5th, 1870, the County Judge made an order reciting the presentation on December 28th, 1869, by Clonts of his final return of receipts and expenditures with vouchers and the resignation of Clonts, and that the whole amount he had expended is $284.79, and that received $284.54, and ordering that the return be received and filed, and that Clonts be discharged from any further responsibility as *ex-officio* administrator of said estate.

On the 10th day of June, 1870, the County Judge made an order which recites that "certain lands having been offered for sale in front of the court-house door at Ocala, Marion county, Florida," by the said administrator, describing him, and "the highest bidder being John B. E. Sloan and William P. Hall, on the 4th day of October, 1869," and ordering "that the report of the said sale of the said estate be and is hereby accepted, received and confirmed," and further ordering "that the Sheriff, John O. Matthews, *ex-officio* administrator of the said estate, do execute and deliver proper titles to the aforesaid John B. E. Sloan and William P. Hall, highest bidders for the lands then and there sold."

On the 14th day of the same month, Matthews, as such sheriff and administrator, made a deed to said Sloan and

Hall conveying to them and their heirs in consideration of $664, the receipt of which is acknowledge, the following lands laying and situate in Marion county, State of Florida, containing in all 1205 acres: It is not necessary to give the descriptions. The deed recites that Clonts, sheriff and administrator aforesaid, pursuant to an order issued out of the court of Probate of Marion county, did, on October 4th, 1869, after legal advertisement thereof, offer for sale at public outcry to the highest bidder, all the real estate of the said William Sloan, deceased, situate, lying and being in said county of Marion, and that Sloan and Hall offered the highest bid. It also recites that Matthews is successor in office to Clonts. The deed was recorded in the clerk's office on the day of its date.

The above facts are made to appear by certified copies of files and records of the county court put in evidence by complainants.

The defendants put in evidence copies of following "notes" certified to by the county Judge of Marion county under date of November 18, 1884, as being on file in his " office as vouchers in the matter of the estate of Willian Sloan, deceased," viz:

Bill single, $550, date January 1861, favor B. F. Sloan, agent, P. M. Co., payable one day, &c.

Bill single date $93.07, January 1, 1861, favor J. B. E. Sloan & Co., payable one day, &c.

Promisory note $550, date January 11, 1861, favor E. E. Givens, 12 mos., &c.

Promissory note $251.79, date January 16, 1861, favor A. B. Bowden, one day, &c.

Bill single $345, date January 1, 1860, favor Z. Powers, 12 mos., &c.

Promissory note $339.25, date January 11, 1861, favor Z. Powers, January 1, 1862.

The first and second are signed by William Sloan, the 3d, 4th and 6th by William and one B. F. Sloan, and the 5th by William and John F. Sloan.

The other facts are stated in the opinion.

*A. W. Cockrell & Son*, for appellants.

*C. P. & J. C. Cooper* for appellees.

RANEY, C. J.:  A party in possession of land may resort to equity to remove a cloud from his title.  The general rule is that if his title is legal in its nature, he must be in possession before he can claim the aid of equity for this purpose, for if he is out of possession, he may by bringing ejectment, test the validity of the instrument or proceedings constituting the alleged cloud.  Story's Eq. Jurisprudence, section 700, note A; Pomeroy's Eq., section 1399, note 4.  Where the title is equitable, possession by the complainant is not essential to the relief, *Ibid*; and the same is also held in Arkansas where the land is wild and unoccupied.  Matthews vs. Marks, 44 Ark., 436.

The weight of the testimony in this case preponderates sufficiently in favor of complainants' possession to give jurisdiction.  The parties, appellant and appellee, claiming title adverse to each other, are non-residents, as was Hall, now deceased, one of the original purchasers under the administrator's sale, whose devisees had been made parties since his death.  The appellees have been in possession by their agent since about six weeks before the filing of the bill under written authority, and he says that he has had charge of all these lands and has run off trespassers under such authority.  Mr. Cooper's testimony is positive that he, as the representative of the appellees, put such agent in possession at the time stated.

The bill of complaint assails the title acquired by Sloan and Hall under the administrator's sale, on the ground that the petition of the administrator, Clonts, does not allege, nor the record of the proceedings of the county court show, an exhaustion of the personal estate of William Sloan. It has not been attempted by any one to treat the sale made of these lands as having been made for any other purpose than for the payment of the debts of William Sloan. The preceding statement of the case shows that there was a petition for the order of sale. In this petition there is no allegation as to the personal assets being exhausted, nor is there any as to the personal estate being insufficient to pay debts, if it can be assumed that the latter allegation would, prior to the act of February 16, 1870, chapter 1732, p. 86, McClellan's Digest, sec. 40, *et seq.*, have given jurisdiction to the *county court.* Hays vs. McNealy, 16 Fla., 409. There is, moreover, nothing in the record of these sale proceedings showing that the question of the exhaustion of personal estate, or i s insufficiency for the payment of debts of the decedent, was adjudicated or presented to the county court for adjudication. If it appeared to have been presented, the order of sale would be an adjudication of the fact and conclusive against any collateral attack upon the jurisdiction. It is true that more than a month before the petition was filed an appointment of persons to appraise the ing real estate of the intestate was made. This was a proceed-entirely novel and unauthorized by our laws bearing upon domestic administrations, and besides this the appraisement proceeding is not nor is any part thereof made a part of, or in any manner referred to, in the petition or in any of the sale proceedings. Freeman on Void Judicial Sales, sec. 13. It consequently is not a part of the petition or sale proceedings, nor does such appraisement proceeding anywhere state that there are no personal assets, or that there

has been an exhaustion, or is an insufficiency of the same. Whether or not a sale of the land was in the contemplation of the court or administrator when the appointment of the appraisers was made, does not appear.

According to the decisions of this court involving administrators' sales made prior to the Constitution of 1868 for the payment of debts of the intestate, the exhaustion or insufficiency of personal assets was a jurisdictional fact. Hays vs. McNealy, *supra* ; Emerson vs. Ross, 17 Fla., 122. In Hays vs. McNealy, this jurisdictional fact did not appear in the record, and the order of sale was held to be void ; in Emerson vs. Ross, it appeared in the order of sale, and this was held to be sufficient. Upon these authorities the sale before us is void, for having the petition and the order of sale before us, and there being in neither, nor, we may say, anywhere else in the sale proceedings, any reference to the fact, the result is that the record either does not show jurisdiction, or else it affirmatively shows a want of jurisdiction.

But it is urged upon us that these adjudications are inapplicable to the case before us, for the reason that the county court in which the proceedings in question were had is a tribunal of a different character from that of judge of probate, which made the order of sale in Hays vs. McNealy, under the Constitution of 1865.

Sections 1 and 8 of the judiciary article of the Constitution of 1865, prior to the amendments of 1875, were as follows :

Section 1. The judicial power of this State, both as to matters of law and equity, shall be vested in a Supreme Court, Courts of Chancery, Circuit Courts, and Justices of the Peace ; provided, the General Assembly may also vest such civil or criminal jurisdiction as may be necessary

in corporation courts, and such other courts as the General Assembly may establish; but such jurisdiction shall not extend to capital cases.

Section 8.   There shall be elected in each county in this State by the qualified voters an officer to be styled the Judge of Probate, to take probate of wills, to grant letters testamentary, of administration and guardianship, to attend to the settlement of the estates of decedents and minors, and to discharge the duties usually appertaining to courts of ordinary, and such other duties as may be prescribed by law, subject to the direction and supervision of the Circuit Courts as may be provided by law.

The sections in the Constitution of 1868 invoked as indicating the real character of the county courts are the first, ninth, tenth, and part of the eleventh, of Article VI.

Section 1.   The judicial power of the State shall be vested in a Supreme Court, Circuit Courts, County Courts and Justices of the Peace.

Section 9.   There shall be a county court organized in each county.

Section 10.   The county court shall be a court of oyer and terminer.

Section 11.   *   *   *   The county court shall have full surrogate and probate powers, but subject to appeal.   Provision shall be made by law for all other powers, duties and responsibilities of the county courts and judges.

The constitution of 1868 gave the county court certain common law powers which it is unnecessary to specify.

The eighth section of the Constitution of 1865 is substantially the same as the ninth section of the fifth Article of the Constitution of 1838, which went into effect in 1845. The Legislature of 1845 declared its jurisdiction in about the same language as the Constitution and provided for an appeal to the Circuit Court.

It was held in Hays vs. McNealy that the power to at-
tend to the settlement of estates and discharge the duties
usually appertaining to Courts of Ordinary were special
powers granted by the Constitution of 1865 to an officer to
be styled the Judge of Probate, and that all of this was
subject to the action of the Legislature prescribing the
method of settling such estates and discharging such du-
ties; that the grant did not invest the Judge of Probate
with power to treat the real estate of intestate estates as
assets applicable to the payment of debts; that there was
in him no such inherent original powers as to real estate,
viewing him either as as an officer vested with special
powers judicial in their character, or as the presiding offi-
cer of a court of limited and special jurisdiction under
legislative grant; that independent of our legislation, land
could not be the subject of sale to pay debts upon applica-
tion by an administrator to such judge, and that all the
power of such tribunal to sell real estate resulted from leg-
islation declaring its assets and giving him a special and
limited power to authorize an administrator to sell it.

Turning to the Constitution of 1868 we fail to perceive
that any greater, (if really as extensive) jurisdiction was
given by it to the county court, in matters pertaining to
the administration of estates of deceased persons as was
given to judges of probate by the organic law of 1865.
There is nothing to be inferred from the mention of county
courts in section 1, of Article VI of the former instrument
(that of 1868) in favor of the power of such courts, or as
against that of judges of probate on account of the absence
of reference to such officers in the first section of the Judi-
ciary Article of the Instrument of 1865, for it is plain that
section 1 of such Article in the Constitution of 1865 refers
in the language preceding the proviso only to law and

equity jurisdiction, section 8 of the same being devoted to the location of judicial power in matters of probate, and of administration and guardianship. The declaration of the tenth section of the Instrument of 1868, that the county court shall be a court of oyer and terminer is of no weight in this connection. Courts of Oyer and Terminer, or acting under Commissioners of Oyer and Terminer, were at the common law courts having power to hear and determine criminal causes. Bouvier's Law Dictionary, title—Courts of Oyer and Terminer; Rapalje and Lawrence, title —Oyer and Terminer; Tomlin's Law Dictionary, same title. The purpose and effect of this section in connection with the criminal jurisdiction given to the county courts by part of the above section eleven, not set out, is made more apparent by the fact that section fifteen of the same article provides that the criminal jurisdiction of Justices of the Peace shall *not* extend to the *trial* of any person for misdemeanor or crime, it being only that of an examination and commitment for trial by the county or circuit courts.

Passing to the eleventh section as set out above we find the declaration that the county court shall have full surrogate and probate powers. There is as is shown by what is advanced above from Hays vs. McNealy, clearly nothing in this that makes real estate assets, or gives power to sell it as such or limits the power of the Legislature to prescribe the conditions upon which the right to sell it shall attach. That these " full surrogate and probate powers " are subject to appeal does not qualify or impair what we have said in the preceding sentence. But what follows in this section ? It is a direction that " provision shall be made by law for all other powers, duties and responsibilities of the county courts and judges." The first Legisla-

ture assembled under this instrument, provided, in the act of August 4, 1868, organizing the county court, section 8, p. 326, McClellan's Digest, that the county court as a court of probate, shall be open at all times, and the judge thereof shall have all the *powers*, and perform all the *duties* prescribed by law as the powers and duties of the Judges of Probate in the several counties of this State, except where the duties conferred by law upon the Judges of Probate in the several counties of this State are imposed upon other officers by the Constitution of this State. The direction of the Constitution contained in section eleven, *supra*, conveyed, by implication, to the Legislature the power to do what it did in this legislation and the power to sell real estate is a creature of the statute and the doctrine of Hays vs. McNealy, is as potentially applicable under the Constitution of 1868 as it was under that of 1865. Whether it is more so we need not discuss. This legislation of 1868 continued in force as applicable to the county court the same statute as to the selling real estate for the payment of debts that was under discussion in Hays vs. McNealy.

The contention that the grant made to the county court in the matter of the sale of real estate of decedents was one of general jurisdiction over the subject is in our opinion altogether untenable. Its powers in this respect were left by the constitution entirely to legislative control, and we concur with the view of that legislation taken in the adjudication from our reports cited *supra*.

Though it was a court vested with "full surrogate and probate powers" by the constitution of 1868, its powers as to the sale of real estate of decedents were statutory, special and limited, and could be exercised only upon the existence of the fact or facts which, under the statute, au-

thorized the sale. "A court," says Westcott, J., 16 Fla., p. 415, "may be of general jurisdiction for one purpose, and of special jurisdiction for another." Its order of sale is not of itself evidence of the existence of such jurisdictional fact or facts, but this must be affirmatively shown by the order or elsewhere appear in the record culminating in such order. Tyson vs. Brown, 64 Ala., 244. In Florentine vs. Barton, 2 Wall, 216, it is said: The petition of the administrators setting forth that the personal property of the deceased is insufficient to pay such debts, and praying the court for an order of sale, brought the case fully within the jurisdiction of the court. See Grignon's Lessee vs. Astor, 2 How, m. p., 339; Brittain vs. Kinnaird, 1 B. & B., (5 E. C. L.) 432, and cases cited in Hays vs. McNealy.

If the record of the county court of Marion showed that the fact of the exhaustion of the personal estate of William Sloan had been presented to the county Judge the order of sale would be an affirmative adjudication of the existence of such fact, and such adjudication would be conclusive against any collateral attack. Epping, Bellas & Co. vs. Robinson, 21 Fla., 36; but there being nothing in this record, constituted as it is, alleging or even referring to such an exhaustion, it is apparent upon the face of it that there was no jurisdiction of the subject matter of selling the real estate. There is nothing in it to which we can apply the doctrine of, Wright's Heirs vs. Ware, 50 Ala., 557, as to liberal construction or reasonable intendment in favor of jurisdiction on collateral attacks.

It is not intended by what has been said to intimate an opinion upon the effect of the failure of the order of sale and the prior sale proceedings to show the purpose for which the application to sell was made, nor of the absence

from such order and proceedings of any specific description of the lands intended to be covered by them.

II. The proceedings of the county court being thus void upon their face, the question arising is, whether they and the deed based upon them constitute, within the meaning of the authorities governing the subject, a cloud upon title.

Where the instrument or proceeding complained of as constituting a cloud is absolutely void upon its face so that no extrinsic evidence is necessary to show its invalidity, or where the deed or other instrument is not thus void on its face, but the party claiming under it must, nevertheless, in order to recover upon it, necessarily offer evidence that will inevitably show its invalidity and destroy its effect, there is no cloud. Pomeroy's Equity, 1399, note 2; Barnes vs. Mayo, 19 Fla., 542; Peirsoll vs. Elliott, 6 Peters, 95; Pixley vs. Huggins, 15 Cal., 127; Leek vs. Ray, 43 Cal., 83; Briggs vs. Johnson, 71 Maine, 235; Ward vs. Dewey, 16 N. Y., 519; Clark vs. Cov. M. L. Ins. Co., 52 Mo., 272; Farnhan vs. Campbell, 34 N. Y., 430; Rea vs. Longstreet, 54 Ala., 291.

The same principle, as applicable to a deed is expressed by this court in Barnes vs. Mayo, *supra*, substantially as follows: The true test is whether, in an action of ejectment brought by the grantee in the deed, and founded upon such deed, the owner in possession would be required to offer evidence to defeat a recovery. If such proof would be necessary, the cloud would exist, but if such proof would not be necessary, no cloud would be cast upon the title by the deed. If the action would fall by its own weight without proof in reply, there is no occasion for equitable interference, as is the case where the deed is void upon its face, or is the result of proceedings void upon their face and re-

quiring no extrinsic evidence to show their illegality. See also Pixley vs. Huggins, *supra.*

In Tyson vs. Brown, 64 Ala., 244, a case of the same character as the one before us, and where it was held that as the record of the Probate Court did not show that it had jurisdiction to grant the order of sale, the sale and conveyance made under the decree of such court by the administrator were void, it was also held that the order of sale and deed of conveyance did not create a cloud on the title of the heirs. And it was said in this case: that the court will not in any case, interfere to avoid sales or cancel conveyances which of themselves afford inherent intrinsic evidence of their own illegality and invalidity. That there was no reason for judicial interference; for such sale or conveyance bearing the evidence of its invalidity could not create a cloud on the title, nor diminish the security of the true owner; that it was not capable of being used as an instrument of vexatious litigation, and that lapse of time could not endanger the means of defence against it if rights under it should be asserted.

In Florence vs. Paschal, 50 Ala., 28, it was also held that the sale of land by an administrator without an order of the Probate Court, or under an order void for want of jurisdiction, was not such a cloud as equity would relieve against. Posey vs. Carraway, 10 Ala., 811. In Mawhorter vs. Armstrong, 16 Ohio, 188, the lot ordered to be sold was not the one described in the petition for the order, and the same doctrine was pronounced and followed by the court. The decision in Meloy vs. Dougherty, 16 Wis., 287, was that a court of equity will not interfere to set aside an award on the ground that it is void if its invalidity will appear on the face of the papers where any right is claimed under it; and in Moore vs. Cord, 14 Wis., 213,

it is held that the rule as to enjoining sales which may create a cloud upon title, always assumes that the cloud to be prevented would apparently constitute a good title against that shown by the complainant, though really defective by reason of something not appearing on the record.

Upon these authorities neither the administrator's deed, nor the order of sale, or the entire proceedings as to the sale, nor such deed and proceedings, constitute a cloud against which equity will grant the complainants relief. The introduction of such deed and proceedings, or of either in evidence would not make a *prima facie* case against the heirs. An action of ejectment founded upon them would find its ruin in them.

III. Another alleged cloud which the bill seeks to remove is a tax deed made by W. H. LeCain, Clerk of Marion county, May 7th, 1875, and covering part of the land, viz.: section 14, and the S. E. quarter of the N. E. quarter of section 15, T. 15, R. 23, containing 680 acres. This deed recites that the lands described in it were sold by John F. Dunn, collector of revenue of the county of Marion, on the 4th day of May, 1874, to A. E. Waterman, for $25, he being the highest bidder, for the non-payment of taxes levied and assessed thereon for the year 1873, and costs and charges. The deed appears to be substantially in the form prescribed by the statute. Waterman subsequently conveyed the lands to Gary, and Gary conveyed them to Sloan and Hall, the purchasers at the administrator's sale.

The tax roll of Marion county for the year 1873 is in evidence, and the above lands appear on it assessed to "William Sloan, or to parties unknown." This assessment, the bill charges, and the evidence proves, to have been made by the collector of revenue, John F. Dunn, and not by the

assessor of taxes. These were distinct offices under the Constitution of 1868, then in force in this State. Dunn says he was collector of revenue, and understanding that William Sloan's lands had not been returned, he thought it to be his duty under the law to make the assessment as tax colector, so that taxes could be collected from them. It is not claimed that Dunn held the office of assessor of taxes. Assuming that the Legislature might, under the provisions of the Constitution of 1868, have conferred on the office of collector of revenue the functions of assessing taxes, it did not attempt to do so in the legislation in force at the time this alleged assessment was made, or by any legislation applicable to it. The provisions of law in force from June 24th, 1869, to the approval of the general revenue law of February 17th, 1874 (chapter 1976) as to the assessment of lands omitted from the assessment roll, was that the assessor of taxes should, when making up his roll for any year, assess for omitted years, for as much as two previous years. Section 24, chapter 1713, Acts of Extra Session of 1869. In the general revenue law of 1874, the same provision, substituting three years for two, are to be found in its 27th section. This act of 1874 remained in force till 1879, and provided, section 66, that all sales for taxes made after April 1st, 1874, should be in pursuance of its provisions, and that all such sales and titles and rights acquired thereunder should be as valid and effectual for all legal purposes as if the assessment had been made and all proceedings prior to such sale had been done under the provisions thereof.

Viewed under either act this assessment is consequently illegal and void, and so are the sale and the deed made under it. It is needless to say that the illegality is not apparent on the face of the deed, or the tax roll or elsewhere. Independent of this, we may remark that it seems to be

the law, where a statute makes the tax deed *prima facie*
evidence of the regularity of the proceedings connected with
the assessment and sale, as do the above acts of 1869 (as
amended in 1872, by section 17, chapter 1887) and 1874,
section 60, that such an instrument is a cloud and will be
set aside as such by a court of equity.   Pomeroy's Eq., sec-
tion 1399, note 1, and citations.   As there is only one town-
ship 15, range 23, in this State, the same being *south* and
*east* of the base parallel and meridian, there is only one
section 14, and one section 15, of such township and range
and for this reason, at least, this deed is not ambiguous on
on its face.   Bowers vs. Andrews, 52 Miss., 596.

The 63d section of the act of 1874 provides that no suit
or proceeding shall be commenced by a former owner or oc-
cupant, or his or their legal representatives, to set aside any
deed made in pursuance of any sale of land for taxes, unless
such suit or proceedings be commenced within one year af-
ter the recording of such deed (or one year after the ceasing
of certain disabilities) except upon the ground that the land
is not subject to taxation, or that the taxes were paid or
tendered, together with the expenses chargeable thereon be-
fore sale.   The recording of the deed is made such assertion
of title, or such entry into possession by the grantee, his
heirs or assigns, as to authorize the suit.

In Carncross vs. Lykes, 22 Fla., 587, a similar section in
the amendatory act of 1872, *supra*, was construed by this
court.   The defendant in ejectment, Lykes, executor
claimed to hold under tax deed from the Clerk of Hillsbor
ough county to his testator, Lipscomb, pursuant to a tax
sale made by the Collector of Revenue of the same county.
The description of the land upon the tax roll was " Block
10, 12, 13, 16," and that in the deed was "Blocks 10, 12
and 13, in the town of Tampa, and according to the general

map of said town." We held the land deeded by the Clerk was never assessed by the Assessor of Taxes of Hillsborough county, that the description on the tax roll was so indefinite as not to designate or identify any particular land, either that described in the deed or any other, and consequently was no description or basis for a sale; that the section of the statute was intended to prevent, after the lapse of the limitation prescribed, suits by the former owner, or his representatives upon technical grounds for informalities and irregularities in the proceedings. After reviewing the duties of the Assessors and those of the Collector, it is said that the statute contemplated that the Clerk can make a deed only for the lands sold by the Collector, and the Collector can only sell the land as described on the assessment roll.

The same section of the act of 1872 was before us in Mundee vs. Freeman, 23 Fla., 529. There was legal evidence of a valid assessment of the land, and the land had been sold for taxes and the tax deed legally recorded, and the limitation as to time had run, and we held the provisions of the section restricting the grounds of attack upon the tax deed or sale to be valid. "The effect of the testimony of the witnesses," says the opinion, p. 535, "and of the mutilated tax roll is not sufficient to overcome the *prima facie* evidence of a valid assessment of the land and of the existence of a warrant which, under the statute, the tax deed constitutes. What we have previously said as to such testimony and tax roll was stated, and is to be considered, with reference to the effect given by the statute to the tax deed as evidence."

The warrant annexed to the roll by the Assessor when he delivered it to the Collector, and likewise the statute upon which it was based, authorized the Collector to col-

lect the taxes set down in such roll opposite to the names of persons and to the several parcels of land therein described, and the statute authorized him to make sale of this real estate and of none other.   The assessment by the Assessor was not only jurisdictional, section 120, Burroughs on Taxation, but it is of lands assessed upon such roll at the time of its delivery to the Collector, that all the provisions of the act as to the sale or the deed speak.

If a tax roll of a particular year went into the hands of an Assessor without an assessment of the lands of a person, such lands were, under legislation like that of 1869, 1872 and 1874, not the subject of sale by the Collector of Revenue.   The default of the owner in returning them for taxes, may, it is true, have subjected him to having them assessed by the Assessor, without such return, but it did not give power to the Collector of Revenue to assess them, nor was such default or that of the Assessor in assessing them, a contingency to which the law attached a liability of lands to sale by the Collector without an assessment by the Assessor.   An assessment by the Collector, or a sale without a previous assessment by an Assessor, was entirely beyond the intent and meaning of the act.   If the lands were assessed on the roll when it went into the hands of the Collector, the owner was presumed to know it, and if he did not pay the taxes and a sale was made, and a deed executed, he was also charged with notice of the consequences which the statute imposed upon him.   If the lands were not upon such roll, he was likewise presumed to know it, and that the only consequence was that they would be assessed the next tax year as well for that as for the preceding year, but the law did not call upon him to anticipate either an assessment or sale by the Collector or subject him to the

provisions of the sixty-third section on account of such assessment or sale.

This tax deed is not within the protection of the sixty-third section, but is a cloud upon the land described in it.

IV. The testimony does not sustain the contention of appellants that Sloan and Hall, the purchasers at the administrator's sale, held the land adversely, in continued occupation and possession for the period of seven years prior to the entry by appellees; nor does it show laches upon the part of the appellees.

V. The view that the administrator's deed and the sale proceedings are not a cloud makes it unnecessary for us to say anything as to the right of the purchasers at such sale to reimbursement as claimed for them under the doctrine of Scott vs. Dunn, 1 Dev. & Bat., Eq., 428, and Bright vs. Byrd, 1 Story, 494, and other similar cases collected in the note to the former case in 30 Am. Dec., 174. Our decree will be without prejudice to the institution by J. B. E. Sloan and the proper representatives of William P. Hall of any proceedings to enforce any reimbursement they may be entitled to growing out of such purchase, and without prejudice to any right not inconsistent with such decree and this opinion.

The cause will be remanded to the Circuit Court sitting in chancery in and for Marion county, with directions that a decree be entered vacating and setting aside the decree appealed from, rendered by it on the 20th day of May, 1886, and that it enter a decree adjudging the tax deed to A. E. Waterman, above referred to, and the deed from Waterman to S. M. G. Gary, and that from Gary to J. B. E. Sloan and William P. Hall, founded on said tax deed, a cloud upon appellees' title, and that the said deeds be surrendered to the Clerk of said Circuit Court and be filed by

him with the other papers in this cause, and that due entry be endorsed by him of the provisions of such decree upon the margin or back of each of said deeds, and upon the margin of the record thereof in the record books of said county.

Half the costs of this appeal should be taxed against J. B. E. Sloan and the devisees of W. B. Hall, appellants, and the other half against the appellees, Susan M. and Sallie H. Sloan, and it will be so decreed.